1  **Brian K. Stewart., Esq. (State Bar No. 126412)**
   **Richard D. Hoang, Esq. (State Bar No. 234503)**
2  **COLLINS COLLINS MUIR + STEWART LLP**
3  **1100 El Centro Street**
   **South Pasadena, CA  91030**
4  **(626) 243-1100 – FAX (626) 243-1111**
5  **Email: bstewart@ccmslaw.com**
   **Email: rhoang@ccmslaw.com**
6

7  Attorneys for Defendant
   COUNTY OF LOS ANGELES
8  (erroneously named as LOS ANGELES COUNTY
9  DISTRICT ATTORNEY'S OFFICE)

10              **UNITED STATES DISTRICT COURT**
11             **CENTRAL DISTRICT OF CALIFORNIA**
12

13 DEANA VARO, an individual, JOSHUA ) CASE NO. 2:18-cv-9025-DMG-KS
   PEREZ, an individual, VANESSA    ) *[Assigned to the Hon. Dolly M. Gee in*
14 PEREZ, an individual, JUSTIN PEREZ, ) *Courtroom 8C]*
15 an individual, CALVIN PEREZ, an   )
   individual, and ELVIS PENA, an    ) **DECLARATION OF RICHARD D.**
16 individual,                       ) **HOANG IN SUPPORT OF MOTION**
17                                   ) **TO DISMISS [F.R.C.P. 12(b)(6)]**
                      Plaintiff,     )
18                                   ) [*Filed concurrently with Defendant's*
19        vs.                        ) *Motion to Dismiss, Defendant's Request*
                                     ) *for Judicial Notice, and [Proposed]*
20 LOS ANGELES COUNTY DISTRICT       ) *Order*]
21 ATTORNEY'S OFFICE, a public entity, )
   GIOVANNI BARTOLETTI, an           ) **DATE:          December 14, 2018**
22 individual, and DOES 1-75, inclusive, ) **TIME:          9:30 a.m.**
23                                   ) **COURTROOM:     8C**
                      Defendants.    )
24 _____ )
25

26 ///
27 ///
28

21400
                                    1
**DECLARATION OF RICHARD D. HOANG IN SUPPORT OF MOTION TO DISMISS**

COLLINS COLLINS
MUIR + STEWART LLP
1100 El Centro Street
So. Pasadena, CA 91030
Phone  (626) 243-1100
Fax    (626) 243-1111

## DECLARATION OF RICHARD D. HOANG

I, Richard D. Hoang, declare as follows:

1.    I am an attorney licensed to practice in the courts of the State of California.  I am an attorney with the law firm of Collins Collins Muir + Stewart LLP, which represents Defendant County of Los Angeles (erroneously sued as Los Angeles District Attorney's Office) in this matter.  I have personal knowledge of the facts stated in this declaration and if called upon to testify regarding the matters herein, I could and would do so competently.

### Meet and Confer with Plaintiffs' Counsel

2.    On October 17, 2018, I sent a letter to Plaintiffs' counsel, Christopher Ardalan, regarding issues Defendant County of Los Angeles ("County") had with Plaintiffs' Complaint.  Attached hereto as Exhibit 1 is a true and correct copy of my October 17, 2018 letter to Mr. Ardalan.

3.    On October 31, 2018, I met and conferred with Plaintiffs' counsel (telephonically) regarding the substance the letter previously sent on October 17, 2018.  Others that participated in this telephone call were attorneys Mark Drew, Jacqueline Leibl, and Geoffrey Hickey.  Mr. Ardalan conveyed that Plaintiffs were amenable to dismissing their second and ninth causes of action for Negligent Hiring, Training, Supervision, Oversight, and/or Retention and Negligent Infliction of Emotional Distress, respectively.  Attached hereto as Exhibit 2 is a true and correct copy of my October 31, 2018 email to Plaintiffs' counsel following our telephonic meet and confer.

4.    There remained several outstanding issues after the meet and confer, to which Plaintiffs' counsel would further elaborate upon in a separate email.

5.    On November 6, 2018, I received a letter from Plaintiffs' counsel, Mark Drew with further authorities following our October 31, 2018 telephonic meet and confer regarding Plaintiffs' Complaint.  Attached hereto as Exhibit 3 is a true and correct copy of Mr. Drew's November 6, 2018 letter further elaborating upon our

COLLINS COLLINS
MUIR + STEWART LLP
1100 El Centro Street
So. Pasadena, CA 91030
Phone   (626) 243-1100
Fax      (626) 243-1111

21400

**DECLARATION OF RICHARD D. HOANG IN SUPPORT OF MOTION TO DISMISS**

1  telephone meet and confer on October 31, 2018.

2       6.     Unfortunately, the County and Plaintiffs were not able to completely

3  resolve their issues with the Complaint, leading to the filing of the instant Motion to

4  Dismiss per Federal Rule of Civil Procedure 12(b)(6).

5  **<u>Plaintiffs' Government Claims</u>**

6       7.     Attached collectively hereto as Exhibit 4 are the Government Claim for

7  Damages to Person or Property submitted by Plaintiffs Justin Perez, Calvin Perez,

8  Deana Varo, Joshua Perez, Elvis Perez, and Vanessa Perez.  Plaintiffs' Government

9  Claims are identical, except for the names of the respective Plaintiffs.

10       8.     The County respectfully requests the Court take judicial notice of these

11  Government Claims attached collectively as Exhibit 4 for the reasons set forth in its

12  Request for Judicial Notice.

13       I declare under the penalty of perjury under the laws of the State of California

14  that the foregoing is true and correct and that this declaration was executed on this

15  9th day of November 2018 at Rancho Cucamonga, California.

16

17                              _____

18                            RICHARD D. HOANG

19

20

21

22

23

24

25

26

27

28

**COLLINS COLLINS MUIR + STEWART**ᴸᴸᴾ
1100 El Centro Street
So. Pasadena, CA 91030
Phone   (626) 243-1100
Fax       (626) 243-1111

21400

3

**DECLARATION OF RICHARD D. HOANG IN SUPPORT OF MOTION TO DISMISS**

# EXHIBIT 1

**COLLINS COLLINS
MUIR + STEWART** LLP

RICHARD D. HOANG
Inland Empire Office
10681 Foothill Blvd., Suite 260
Rancho Cucamonga, CA 91730
T 909-581-6100
F 909-581-6101
rhoang@ccmslaw.com

October 17, 2018

**VIA EMAIL and U.S. MAIL**

pca@ardalanlaw.com
P. Christopher Ardalan, Esq.
Ardalan & Associates, PLC
5950 Canoga Ave., Suite 610
Woodland Hills, CA 91367

Re:     *Deana Varo, et. al. v. Los Angeles County District Attorney's Office, et. al.*
        Our File Number:     21400

## MEET AND CONFER

Dear Mr. Ardalan:

Our office has been retained to represent the Los Angeles County District Attorney's Office ("County") in the above-referenced matter.  Please allow this to serve as our meet and confer prior to the filing of a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and Motion to Strike pursuant to Federal Rule of Civil Procedure 12(f).

## REMOVAL

Please be advised that the County will be removing this action to federal court pursuant to 28 U.S.C. § 1441.

## MOTION TO DISMISS

Following the removal of this action, the County intends to file a Motion for Dismiss for Failure to State a Claim per Federal Rule of Civil Procedure 12(b)(6).  Plaintiffs' Complaint must contain "enough facts to state a claim that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Where there is a "lack of a cognizable theory" or an "absence of sufficient facts alleged under a cognizable theory," dismissal under Rule 12(b)(6) is proper.  *Ballistreri v. Pacifica*

Los Angeles County
Orange County
San Diego County
Northern California
Inland Empire

www.ccmslaw.com

P. Christopher Ardalan, Esq.
October 17, 2018
Page 2

*Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) Naked assertions accompanied by "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

1. <u>**Plaintiffs Fail To State A Claim With Respect To Their Second Cause Of Action For Negligent Hiring, Training, Supervision, Oversight, And/Or Retention**</u>

"[N]o suit for money or damages may be brought against a public entity on a cause of action for which a claim is required to be presented…until a written claim therefor has been presented to the public entity and has been acted upon by the board, or has been deemed to have been rejected by the board…" Gov't. Code § 945.4. Government Code section 910(c) requires that a claim state the "date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted." "'If a plaintiff relies on more than one theory of recovery against the [governmental agency], each cause of action must have been reflected in a timely claim…'[Citations.]" *Fall River Joint Unified School Dist. v. Superior Court*, 206 Cal.App.3d 431, 434 (1988); See, e.g., *Stocket v. Association of California Water Agencies Joint Powers Insurance Authority*, 34 Cal.4th 441, 448, fn. 4 (2004) citing to *Lopez v. Southern California Medical Group,* 115 Cal.App.3d 673, 676-677 ("claim alleging the state negligently issued a driver's license to defendant despite his epileptic condition was insufficient to allow amended complaint alleging the state neglected to suspend or revoke license despite defendant's failure to comply with accident reporting and financial responsibility laws") (1981); *Donohue v. State of California ,* 178 Cal.App.3d 795, 803-804 ("claim alleging the Department of Motor Vehicles negligently allowed an uninsured motorist to take a driving test did not give adequate notice of complaint's allegation that the department negligently supervised and instructed the driver during the driving exam") (1986).

In *Fall River*, the plaintiff's government claim alleged he was hurt because a door was in a dangerous and defective condition. *Id.* However, the plaintiff filed a first amended complaint which alleged "school district personnel negligently failed to supervise students who were engaged in 'dangerous horseplay,' and that in the course of this play plaintiff fell in such a way that his head was caught between the door and the doorjamb." *Id.* The defendant filed a motion for judgment on the pleadings with respect to the "failure to supervise" cause of action. *Id.* at 434-435. The appellate court held "defendant was given no warning that it might be sued for its employee's failure to supervise plaintiff and his fellow students, and had no opportunity to consider the validity of such a claim until the filing of the amended complaint." *Id.* at 436. "Accordingly, insofar as his third cause of action [*i.e.*, failure to supervise] is concerned, plaintiff did not even rise to the level of minimal, much less substantial compliance with the claim filing prerequisites." *Id.*

Here, all 6 Plaintiffs attached the same description of the incident and basis for why the County is responsible to their Government Claim. Nowhere in the Claim does it refer to negligent training,

P. Christopher Ardalan, Esq.
October 17, 2018
Page 3

supervision, oversight, and/or retention. Plaintiffs state that the basis of the County's liability is it violated a duty to not disclose the telephone/address of any victim or witness. Similar to *Fall River*, Plaintiffs' Complaint does not reflect what was presented in their Government Claims. Therefore, Plaintiffs' second cause of action is barred.

Notwithstanding the Government Claim issue, the County is protected by Sovereign Immunity pursuant to the United States Constitution. See *Venegas v. County of Los Angeles,* 32 Cal. 4th 820, 829 (2004). The District Attorney's office acts on behalf of the State, including in training and preparing to prosecute criminal violations of state law.. *Pitts v. County of Kern*, 17 Cal. 4th 340, 366 (1998). Accordingly, the Los Angeles County District's Attorney's Office is immune as to this cause of action.

## 2. <u>Plaintiffs Fail To State A Claim With Respect To Their Sixth Cause Of Action For Negligent Misrepresentation</u>

Plaintiffs' claim for negligent misrepresentation fails because the County is immune per Government Code section 818.8: "A public entity is not liable for an injury caused by misrepresentation by an employee of the public entity, whether or not such misrepresentation be negligent or intentional." Gov't Code § 818.8.

## 3. <u>Plaintiffs Fail To State A Claim With Respect To Their Ninth Cause Of Action For Negligent Infliction Of Emotional Distress</u>

Plaintiffs' claim for negligent infliction of emotional distress fails because it is duplicative of their negligence claim. In California, negligent infliction of emotional distress is not a separate tort. *Potter v. Firestone Tire & Rubber Co.*, 6 Cal.4th 965, 984 (1993). Plaintiffs' claim for negligent infliction of emotional distress is based upon the same facts as its negligence claim. Therefore, this claim must fail.

## 4. <u>Plaintiffs Fail To State A Claim With Respect To Their Eleventh Cause Of Action For Violation Of 42 U.S.C. § 1983</u>

Plaintiffs bring this claim on the grounds that the County selectively withheld protective services from them based on their race, and failed to take their constitutional rights to privacy, life, personal security and bodily integrity seriously. Compl. at ¶ 190.

First, the County is protected by Sovereign Immunity pursuant to the United States Constitution. See *Venegas v. County of Los Angeles,* 32 Cal. 4th 820, 829 (2004). The District Attorney's office acts on behalf of the State. *Pitts v. County of Kern*, 17 Cal. 4th 340, 362 (1998). Accordingly, the Los Angeles County District's Attorney's Office is immune.

P. Christopher Ardalan, Esq.
October 17, 2018
Page 4

Second, Plaintiffs' claim for a violation of 42 U.S.C. § 1983 fails against the County because it cannot be held liable based on respondeat superior. *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 691 (1978). Plaintiffs' claims against the County are solely based on respondeat superior. Compl. at ¶ 12 ("Defendants, LADA and DOES 1 through 25, are municipal governmental entities chartered and established by operation of law and lawfully responsible for the conduct of their actual, impled and/or ostensible agents(s), servant(s), employee(s)…" A government may be sued under § 1983 when governmental policy/custom is the cause of a deprivation of federal rights. *Id.* at 694.

Second, Plaintiffs' claim also fails because Plaintiffs do not allege any facts vis-à-vis the purported deprivation of their rights, making only conclusory statements that such deprivation was based on race and violation of Constitutional rights.

Accordingly, Plaintiffs' claim for a violation of 42 U.S.C. § 1983 should be dismissed.

### 5. Plaintiffs Fail To State A Claim With Respect To Their Twelfth Cause Of Action For Breach Of Contract

Plaintiffs claim that they entered into a contract whereby Plaintiffs Elvis Pena and Vanessa Perez agreed to cooperate in the prosecution of Jonathan Quevedo in exchange for the promise not to misuse Plaintiffs' confidential information and to protect all Plaintiffs. Compl. at ¶ 215.

First, the claim fails as to all Plaintiffs because the breach of contract is not reflected in Plaintiffs' Government Claims.

Second, in order for  "prevail on a cause of action for breach of contract, the plaintiff must prove (1) the contract, (2) the plaintiff's performance of the contract or excuse for nonperformance, (3) the defendant's breach, and (4) the resulting damage to the plaintiff." *Richman v. Hartley,* 224 Cal.App.4th 1182, 1186 (2014). Here, Plaintiffs fail to show the existence of any contract between the County and Plaintiffs Joshua Perez, Deana Varo, Justin Perez, and Calvin Perez.

Accordingly, Plaintiffs' claim for breach of contract should be dismissed.

Additionally, Plaintiffs' claim for damages for physical and mental pain (Compl. at ¶228) are subject to a Motion to Strike pursuant to Federal Rule of Civil Procedure 12(f) since such damages are not recoverable in a breach of contract claim. *Erlich v. Menezes*, 21 Cal.4th 542, 558 (1999) Plaintiffs are not entitled to tort damages. *Id.* at 550.

P. Christopher Ardalan, Esq.
October 17, 2018
Page 5

**6.** **Plaintiff Fail To State A Claim With Respect To Their Thirteenth Cause Of Action for Breach Of The Implied Covenant Of Good Faith And Fair Dealing**

Plaintiffs' Breach of the Implied Covenant of Good Faith and Fair Dealing cause of action is nothing more than a restated Breach of Contract cause of action. The breach of the implied covenant cause of action can be disregarded as superfluous because no additional claim is actually stated. *Careau & Co. v. Security Pacific Business Credit, Inc.,* 194 Cal.App.4th 873, 885 (2011); See *Habitat Trust for Wildlife, Inc. v. City of Rancho Cucamonga*, 175 Cal.App.4th 1306, 1344 (2009).

Therefore, this cause of action is subject to dismissal for being duplicative of the breach of contract cause of action, and subject to the same reasons for dismissal outlined above, i.e., failure to present in Government Claim, the lack of a contract with certain Plaintiffs, and subject to a Motion to Strike as outlined above.

## REQUEST TO MEET AND CONFER

We ask that you please contact us by October 22, 2018 to discuss the foregoing, and whether your clients will agree to dismiss the causes of action discussed above.

We look forward to hearing from you.

Very truly yours,

COLLINS COLLINS MUIR + STEWART LLP

RICHARD D. HOANG

RDH:

*File #21400*

# EXHIBIT 2

| | |
|---|---|
| **From:** | Richard D. Hoang |
| **To:** | "Mark Drew"; Christopher Ardalan; Jackie Leibl |
| **Cc:** | FILE |
| **Subject:** | Varo v. LADA [CCMS #21400] |
| **Date:** | Wednesday, October 31, 2018 3:01:32 PM |

Good afternoon,

It was a pleasure speaking with you earlier today.  Just to quickly sum up our conversation:

1. Plaintiffs are willing to drop the Negligent Supervision (2nd) and Negligent Infliction of Emotional Distress (9th) causes of action.  If a 12(b)(6) motion is filed, we will note in the motion that the parties have reached an agreement on these 2 causes of action.

2. Negligent misrepresentation cause of action – Plaintiffs contend the immunity applies to commercial/financial interests, not those alleged in this case.  Mr. Drew will follow up with authority in a separate email.

3. 42 USC 1983 – While Plaintiffs agree that there are no facts for the racial discrimination, there are still allegations pertinent to deprivation of their privacy interests.  Plaintiffs contend the State authority re sovereign immunity cited by CoLA are in conflict with federal authorities.  Mr. Drew will also provide authority in a separate email.

4. Breach of Contract and Breach of Implied Covenant causes of action – No agreement reached.  Plaintiffs contend that facts provided in Government Claim were sufficient to put CoLA on notice per *Stockett*.  CoLA disagrees, *Fall River* is applicable. Nevertheless, CoLA will re-read *Stockett* and Mr. Drew will follow up with any additional authority.

Thank you everybody.  Please do not hesitate to contact us if you have any questions.

Very truly yours,

**Richard D. Hoang**
Attorney at Law

**T**: 909-581-6100 | **C**: 626-800-8536
**F**: 909-581-6101
10681 Foothill Blvd. Suite 260
Rancho Cucamonga, CA 91730
rhoang@ccmslaw.com



www.ccmslaw.com
South Pasadena 626-243-1100 - Orange 714-823-4100 - San Diego 760-274-2110
Oakland 510-844-5100 - Inland Empire 909-581-6100

PLEASE NOTE: The information contained in this e-mail transmission is intended to be sent only to the stated recipient of the e-mail. If the reader of this message is not the intended recipient or the intended recipient's agent, you are hereby notified that we do not intend to waive any privilege that might ordinarily attach to this communication and that any dissemination, distribution, or copying of the information contained in this e-mail is therefore prohibited. You are further asked to notify us of any such error in transmission as soon as possible at the telephone number shown below and to delete the e-mail. Thank you for your cooperation.

# EXHIBIT 3



**ARDALAN & ASSOCIATES**

A PROFESSIONAL LAW CORPORATION
TRIAL LAWYERS

LOS ANGELES | SAN DIEGO | COLUMBUS | CLEVELAND
WWW.ARDALANLAW.COM

November 6, 2018

**SENT VIA U.S MAIL, EMAIL & FACSIMILE: (626)243-1111**
Brian K. Stewart, Esq.
Richard D. Hoang, Esq.
COLLINS COLLINS MUIR+STEWART LLP
1100 El Centro Street
South Pasadena, CA 91030

  **Re: Deana Varo, et al v. Los Angeles County District Attorney's Office**

Dear Mr. Hoang:

**REVISED DRAFT EMAIL RESPONSE**

I apologize for not getting back to you sooner, I have been unexpectedly engaged in preparation of a temporary restraining order that demanded my immediate and full attention the last few days. The following are the citations I promised to send you during our conference call the other day:

**STATE VS. FEDERAL CASE LAW TREATMENT OF THE SOVEREIGN IMMUNITY ISSUE**

  As we discussed during our telephone conversation, there is a divergence between how federal courts have treated the holdings in the two key cases cited in your letter dated October 17, 2018 (the "Letter"). In particular, in your Letter, you cite *Venegas v. County of Los Angeles* (2004) 32 Cal. 4th 820, 829 and *Pitts v. County of Kern* (1998) 17 Cal.4th 340, 366 for support of your contention that Sovereign Immunity bars the 2nd Cause of Action (Negligent Hiring, Training, Supervision, Oversight and/or Retention) and the 11th Cause of Action (§ 1983 Violation) of Plaintiff's Complaint. (*See* your Letter, at page 3).

  As you are well aware, Sovereign Immunity is based on the Eleventh Amendment to the U.S. Constitution, and, in this context, provides immunity only to lawsuits brought against any of the 50 states as well as state officers. *Womack v. County of Amador* (2008) 551 F. Supp.2d 1017, 1025 – 1026. While the 11th Amendment applies to each state and state officers the immunity does not apply to defendants below the state level such as cities, counties and local officers who, therefore, can face § 1983 liability. *McMillian v. Monroe County* (1997) 520 U.S. 781, 784 – 785. In *McMillian*, the U.S.

Supreme Court set forth a list of factors that must be used in determining whether a county employee, such as a District Attorney or a Sheriff, should be considered a state official and therefore subject to the Sovereign Immunity Doctrine. *Id.* In the *Venegas* and *Pitts* decisions, the California Supreme Court applied the *McMillian* factors to conclude that a sheriff (*Venegas*) and a district attorney (*Pitts*) were "state officials" and therefore protected by Sovereign Immunity.

In contrast to California state courts which are duty bound to follow the California Supreme Court holdings such as *Venegas* and *Pitts*, Federal District Courts are merely obligated to consider these state cases as "evidence" that is relevant to the determination of whether a defendant should be considered a "state official". *Womack* 551 F. Supp.2d at 1026. This is "[b]ecause § 1983 liability implicates federal, not state law [and] California case law is not controlling." *Id.* Accordingly, even the lowest level federal trial court "need not blindly accept the California Supreme Court's" application of the *McMillian* factors. *Id.* As a result, there is a "split in authority between the Ninth Circuit and the California Supreme Court with respect to whether a district attorney acts on behalf of the state or the county when investigating a crime." *Id.*, (citing *Pitts*). For example, the Federal Central District of California held that the *Venegas* decision "misconstrued federal constitutional law." *Smith v. County of Los Angeles* (2008) 535 F.Supp.2d 1033, 1036 and 1037: ("The *Venegas* decision, if adopted by the federal courts, would essentially end federal civil rights litigation as we know it."); *Goldstein v. City of Long Beach* (9th Cir. 2013) 715 F.3d 750, 762  (Holding that despite the *Pitts* decision, a California district attorney acts as a county official when the challenged conduct "does not involve prosecutorial strategy, but rather administrative oversight of systems used to help prosecutors comply with their constitutional duties.") Accordingly, because Defendant removed this matter to federal court, simply citing *Venegas* and *Pitts* does not have the same impact on the issue of whether Sovereign Immunity applies.

## THE AVAILABLITY OF "PERSONAL INJURY" DAMAGES IN PLAINTIFF'S BREACH OF CONTRACT CAUSE OF ACTION (*i.e.* THE 12TH CAUSE OF ACTION):

Your Letter (page 4) states ". . .  Plaintiffs' claim for damages for physical and mental pain (Compl. at ¶ 228) are subject to a Motion to Strike pursuant to Federal Rule of Civil Procedure 12(f) since such damages are not recoverable in a breach of contract claim. *Erlich v. Menezes*, 21 Cal.4th 542 **[SIC]**, 558 (1999). *Plaintiffs are not entitled to tort damages. Id.* at 550.

Your Letter misstates both the citation and the holding of *Erlich v. Menezes* (1999) 21 Cal. 4th *543*, 981 P.2d 978. *Erlich* merely stands for the uncontroversial rule that tort-like damages (for example emotional distress) are <u>usually not recoverable</u> ". . . where the <u>defendant's tortious conduct has resulted only in economic injury to the plaintiff."</u> *Id.*, at

554 – 555. [emphasis added]. However, neither on the page cited in your Letter, nor anywhere else in the decision, does the Court in *Erlich* conclude that emotional "damages are not recoverable in a breach of contract claim" as you assert in your Letter (citing *Erlich* at 550). Instead, the *Erlich* court specifically noted that

> "'<u>While the purposes behind contract and tort law are distinct, the boundary line between them is not</u> (*Freeman & Mills, Inc. v. Belcher Oil Co.* (1995) 11 Cal.4th 85, 106, 44 Cal.Rptr.2d 420, 900 P.2d 669 (conc. and dis. opn. of Mosk, J.) (*Freeman & Mills* )) and <u>the distinction between the remedies for each is not "'found ready made.'"</u> [Citation] <u>These uncertain boundaries and the apparent breadth of the recovery available for tort actions create pressure to obliterate the distinction between contracts and torts — an expansion of tort law at the expense of contract principles which Grant Gilmore aptly dubbed 'contorts</u>.'"

*Erlich* at 551. [emphasis added]. The Court in *Erlich* went on to note that "Tort damages have been permitted in contract cases where a breach of duty directly causes physical injury." *Id.* at 551 – 552 (Citation omitted). The Court also noted that, for example, emotional distress claims are recoverable, ***as a contract damage***, where "the defendant has assumed a duty to plaintiff in which the emotional condition of the plaintiff is an object. . . ." *Erlich* at 555.

As we discussed during our telephone conversation, and as alleged in Plaintiffs' Complaint, the nature of the contract between Plaintiffs and Defendants in this case is far different than the contract at issue in *Erlich* which was to "build a house." *Erlich* at 548. In the current case, the promise made by the DA was that Plaintiffs' names, addresses and other private information would not be disclosed to the Defendant or to his notoriously violent street gang. As alleged, the very purpose of this promise was to protect Plaintiffs' from the disclosure of their "confidential personal information" in order to protect their safety from any threats of or actual acts of violence committed by the underlying criminal defendant and/or his gang. (Complaint at ¶¶ 198, a – b, et seq.) Moreover, it is specifically alleged in the Complaint that Defendants entered into the agreement with the specific knowledge that the agreement as contemplated was intended to protect Plaintiffs' physical and emotional safety. (Complaint at ¶¶ 199 *see also* ¶¶ 32i – 32v, *et seq.*)

In short, the fact that the object of the parties' agreement was that the Plaintiffs' physical and emotional safety would be protected was written into the very DNA of the contract that is the subject of Plaintiffs' 12th Cause of Action. Under these circumstances, it is well established California law that Plaintiffs may recover tort like damages such as emotional distress damages because the very nature of the contract is such that a breach would foreseeably cause such harm. *Cobler v. Stanley, Barber,*

*Southard, Brown & Assocs.* (1990) 217 Cal.App.3d 518, 531, 265 Cal.Rptr. 868, 875-876; Rest.2d Contracts § 353; *Plotnik v. Meihaus* (2012) 208 Cal.App.4th 1590, 1601-1602, 146 Cal.Rptr.3d 585, 596 (breach of agreement by neighbors not to harass each other properly allowed emotional distress damages); *Windeler v. Scheers Jewelers* (1970) 8 Cal.App.3d 844, 852, 88 Cal.Rptr. 39, 44-45 (emotional stress damages proper in breach of contract claim against jeweler who lost family heirloom when agreement contemplated the jeweler would be entrusted with cherished pieces that had great sentimental value).

### THE LIMITED SCOPE OF MISREPRESENTATION IMMUNITY

As stated in your Letter (page 3), with regard to Plaintiff's 6th cause of action for Negligent Misrepresentation, "...the County is immune per Government Code Section 818.8 'A public entity is not liable for an injury caused by misrepresentation by an employee of the public entity, whether or not such misrepresentation be negligent or intentional.'"   Although not mentioned in your Letter, Gov. Code § 822.2 also contains a similar "immunity" that applies directly to public employees:  "A public employee acting in the scope of his employment is not liable for an injury caused by his misrepresentation, whether or not such misrepresentation be negligent or intentional, unless he is guilty of actual fraud, corruption or actual malice."

It is legal bedrock that these immunities are very limited and do not apply to the type of personal injury claims at issue in this lawsuit.  The California Supreme Court specifically held that immunity under Government Code sections 818.8 and 822.2 is not absolute.   Rather, it applies only when the negligent or intentional wrongdoing **involves interferences with financial or commercial interests.** (*Garcia v. Superior Court* (1990) 50 Cal.3d 728, 738, fn. 8, 268 Cal.Rptr. 779, 789 P.2d 960; *Johnson v. State of California* (1968) 69 Cal.2d 782, 800, 73 Cal.Rptr. 240, 447 P.2d 352 clarified on another point in *Thompson v. County of Alameda* (1980) 27 Cal.3d 741, 167 Cal.Rptr. 70, 614 P.2d 728. In *Johnson* the California Supreme Court specifically held that when creating the misrepresentation immunities in §§ 818.8 and 822.2 the legislature intended that the immunity would be limited to cases involving misrepresentations of a financial or commercial character. (*Johnson* at p. 800; see 2 Sen.J. (1963 Reg.Sess.) p. 1889.)

Specifically, it is important to note that the "**misrepresentation immunity" "does not apply to ... misrepresentations involving risk of physical harm.**" (*Garcia v. Superior Court* 50 Cal.3d at p. 738, fn. 8; *see also Adkins v. State of California* (1996) 50 Cal.App.4th 1802, 1818, 59 Cal.Rptr.2d 59, disapproved on other grounds in *City of Moorpark v. Superior Court* (1998) 18 Cal.4th 1143, 1156–1158, 77 Cal.Rptr.2d 445, 959 P.2d 752.) [emphasis added].

We look forward to any response you have regarding the issues addressed above or any of the other issues we discussed during the conference call.  We would certainly consider any authorities or responsive arguments with an open mind.


Very truly yours,

**ARDALAN & ASSOCIATES, PLC**

MARK K. DREW
Attorney at Law

# EXHIBIT 4

# CLAIM FOR DAMAGES
## TO PERSON OR PROPERTY

**COUNTY OF LOS ANGELES**



`18-715--`

2018 MAR 16 PM 2: 13

FILED

**INSTRUCTIONS.**
1 Read claim thoroughly
2 Fill out claim as indicated attach additional information if necessary
3 Please return this original signed claim and any attachments supporting your claim This form **must** be signed

DELIVER OR U S MAIL TO
EXECUTIVE OFFICER, BOARD OF SUPERVISORS, ATTENTION CLAIMS
500 WEST TEMPLE STREET, ROOM 383, KENNETH HAHN HALL OF
ADMINISTRATION, LOS ANGELES CA 90012

(213) 974-1440

| | |
|---|---|
| 1 ☒ Mr ☐ Ms ☐ Mrs  **LAST NAME** PEREZ  **FIRST NAME** JUSTIN | 10 WHY DO YOU CLAIM COUNTY IS RESPONSIBLE?  **PLEASE SEE ATTACHED** |
| 2 ADDRESS OF CLAIMANT/ATTORNEY  5950 CANOGA AVE., SUITE 610 WOODLAND HILLS, CA  91367 | |
| Street        City State        Zip Code | |
| HOME TELEPHONE | BUSINESS TELEPHONE (818 702-2570 |
| 3 CLAIMANT'S BIRTHDATE | 4 CLAIMANT'S SOCIAL SECURITY NUMBER |
| 5 DATE AND TIME OF INCIDENT  09/19/2017 AT APPROXIMATELY 5:00 AM | 11 NAMES OF ANY COUNTY EMPLOYEES (AND THEIR DEPARTMENTS) INVOLVED IN INJURY OR DAMAGE (IF APPLICABLE) |

| NAME | DEPT |
|---|---|
| GIOVANNI BARTOLETTI | DEPUTY DISTRICT ATTORNEY |
| NAME | DEPT |

**6 WHERE DID DAMAGE OR INJURY OCCUR?**

Street        City State        Zip Code

**12 WITNESSES TO DAMAGE OR INJURY LIST ALL PERSONS AND ADDRESSES OF PERSONS KNOWN TO HAVE INFORMATION**

| NAME | PHONE |
|---|---|
| **7 DESCRIBE IN DETAIL HOW DAMAGE OR INJURY OCCURRED** | ADDRESS |
| **PLEASE SEE ATTACHED** | NAME | PHONE |
| | ADDRESS |
| | NAME | PHONE |

13 LIST DAMAGES INCURRED TO DATE (and attach copies of receipts or repair estimate)

**8 WERE POLICE OR PARAMEDICS CALLED?**

YES ☒    NO ☐

**9 IF PHYSICIAN WAS VISITED DUE TO INJURY INCLUDE DATE OF FIRST VISIT AND PHYSICIAN'S NAME, ADDRESS AND PHONE NUMBER.**

| DATE OF FIRST VISIT | PHYSICIAN'S NAME |
|---|---|
| PHYSICIAN'S ADDRESS | PHONE ( ) |

| TOTAL DAMAGES TO DATE | TOTAL ESTIMATED PROSPECTIVE DAMAGES |
|---|---|
| $ TBD | $ TBD |

### THIS CLAIM MUST BE SIGNED
### NOTE. PRESENTATION OF A FALSE CLAIM IS A FELONY (PENAL CODE SECTION 72)

## WARNING

CLAIMS FOR DEATH, INJURY TO PERSON OR TO PERSONAL PROPERTY MUST BE FILED NOT LATER THAN 6 MONTHS AFTER THE OCCURRENCE (GOVERNMENT CODE SECTION 911 2)

ALL OTHER CLAIMS FOR DAMAGES MUST BE FILED NOT LATER THAN ONE YEAR AFTER THE OCCURRENCE. (GOVERNMENT CODE SECTION 911 2)

SUBJECT TO CERTAIN EXCEPTIONS, YOU HAVE ONLY SIX (6) MONTHS FROM THE DATE OF THE WRITTEN NOTICE O OF YOUR CLAIM TO FILE A COURT ACTION  (GOVERNMENT CODE SECTION 945.6)

- IF WRITTEN NOTICE OF REJECTION OF YOUR CLAIM IS NOT GIVEN, YOU HAVE TWO (2) YEARS FROM ACCRUAL OF TO FILE A COURT ACTION  (GOVERNMENT CODE SECTION 945.6)

| 14 PRINT OR TYPE NAME | DATE | 15 SIGNATURE OF CLAIMANT OR PERSON FILING ON RELATIONSHIP TO CLAIMANT |
|---|---|---|
| P CHRISTOPHER ARDALAN | 03/15/2018 | |

*Justin Perez, (a minor)*

## COUNTY CLAIM FORM:

### No. 7 - "Describe in detail how the DAMAGE or INJURY occurred?"

On March 16, 2017, Vanessa Perez and her husband, Elivs Pena visited one of their favorite Salvadoran restaurants, Los Molcajetes, in their Westlake neighborhood  As Ms  Perez and Mr  Pena were minding their own business and awaiting their food order, a man, later identified as Jonathan Quevedo, began to verbally harass and threaten them  Not wanting to have any trouble with anyone, Ms  Perez and Mr  Pena quickly attempted to exit the restaurant to avoid any further confrontation  However, Jonathan Quevedo quickly escalated the situation and began to physically attack Ms  Perez and Mr  Pena, striking them with a cane and threatening to kill them  Ms  Perez and Mr  Pena were able to escape out of the back of the restaurant

When the LAPD reviewed the surveillance video from inside the restaurant, the officer recognized the assailant as Jonathan Quevedo, a documented gang member with a lengthy criminal history dating back nearly 15 years  Mr  Quevedo was found, arrested and charged with three (3) counts of assault with a deadly weapon on or about April 20, 2017

On or about August 8, Ms  Perez and Mr  Pena appeared in a downtown LA courtroom for a hearing wherein a protective order was issued  Ms  Perez and Mr  Pena expressed to the investigating officers and the prosecuting attorneys that they were reluctant to participate in the process and they were fearful that Mr  Quevedo's gang would retaliate against them if they cooperated  Ms  Perez and Mr  Pena were repeatedly assured that protective measure would be taken and they would be safe and have nothing to worry about  However, upon information and belief, prior to the issuance of the protective order, the Los Angeles County Deputy District Attorney who filled out the application for the protective order, filed it without properly removing or otherwise redacting the home and business addresses of the very people he was seeking to protect, Ms  Perez and Mr  Pena

Applications for criminal protective orders are sought to protect victims and witnesses of crimes from being stalked, harassed, injured or killed by the criminal defendants they may be testifying against  Criminal protective orders do not require that the address of the victim or witness be provided and for good reason – it points the criminal defendant directly to where the victim or witness lives, which all but guarantees that the victim/witness' safety is jeopardized  In fact, such conduct by an attorney is not only prohibited, but can amount to a crime  Per Penal Code section 1054 2, "no attorney may disclose or permit to be disclosed to a defendant, members of the defendant's family, or anyone else, the address or telephone number of a victim or witness[ ]"

Here, a Los Angeles County Deputy District Attorney violated Penal Code section 1054 2 by providing addresses for Ms  Perez and Mr  Pena on the protective order  Not only should this prosecutor have known that this information would become public record if not withdrawn or redacted, but he should have known that Mr  Quevedo or any member of Mr  Quevedo's gang

could access this information, track Ms Pena and/or Mr Perez down, and try to injure or kill them or their family in an attempt to silence their testimony

On or about September 19, 2017, in the early morning hours, Mr Quevedo came to the home address, which had been provided by the Los Angeles County Prosecutor, of Ms Perez and Mr Pena in a clear and blatant attempt to intimidate and cause them fear and bodily harm in order to prevent Ms Perez and Mr Pena from testifying against him in any criminal matter

On or about September 19, 2017, Mr Quevedo fired his hand-gun into a vehicle occupied by Ms Perez and Mr Pena's adult son, Joshua Perez Joshua Perez's wife, Deana Varo, was also in the vehicle Joshua Perez was grazed by a bullet fired by Mr Quevedo Ms Varo was struck three (3) times with bullets fired from Mr Quevedo's gun

Ms Varo and Joshua Perez both suffered extreme physical, mental and emotional injuries as the result of the Los Angeles County Prosecutor's actions Ms Vanessa Perez and Mr Elivs Pena suffered extreme mental and emotional injuries as the result of the Los Angeles County Prosecutor's actions

Out of fear for their own lives and well-being, the entire family, Vanessa Perez, Elivs Pena, Joshua Perez, Deana Varo (their 2 minor children), Calvin Perez and Justin Perez were all forced to immediately flee the safety of their home and enter protective custody so the gang would not attempt to exact any additional revenge or retribution

Since the very beginning of the nightmare ordeal, Ms Perez and Mr Pena have lived in constant fear that Mr Quevedo and his gang would try to further harm or kill them or their family They were so fearful that they never told their family about the initial assault, hoping it would all just fade away and they could go on with their lives Their worst fears were realized on September 19, 2017 when Quevedo tried to kill Joshua Perez and Deana Varo Since that day, the entire family has been living a constant nightmare They have been completely uprooted from the life they once knew, forced to relocate to an entirely different and unfamiliar neighborhood They are afraid to leave their house They are afraid that every individual they see is a potential gang associate of Jonathan Quevedo They are deathly afraid that the very people that were supposed to protect them initially will betray their trust again, with deadly results

### No. 10 - "Why do you claim the County is responsible?"

Per Government Code section 815 6, the County is responsible because it violated a mandatory duty imposed on its employees under Penal Code section 841 5 to not disclose the address or telephone number of any victim or witness to any person who may be a defendant in a criminal action

Penal Code section 841 5 imposes a mandatory duty on County law enforcement, which necessarily includes District Attorneys, not to disclose such information Plaintiff is informed

and believes that a County of Los Angeles Deputy District Attorney violated this mandatory duty by failing to removing or otherwise redacting the home and business addresses of his assault victims, Ms Perez and Mr Pena

Plaintiff is informed and believes that the purpose of Penal Code section 841 5 is to protect victims, witnesses, and/or the families of victims and/or witness to a crime, from suffering injury and/or death  Plaintiffs are informed and believe that as a direct consequence of the County's failure to comply with the mandatory duty imposed by Penal Code section 841 5, Mr Quevedo was able to track down the home of his victims and open fire on a vehicle occupied by Ms Perez and Mr Pena's adult son, Joshua Perez and Joshua Perez's wife, Deana Varo, in a brazen attempt to prevent Ms Perez and Mr Pena from testifying against him in any criminal matter

# CLAIM FOR DAMAGES
# TO PERSON OR PROPERTY

BD OF SUPERVISORS
COUNTY OF LOS ANGELES

**COUNTY OF LOS ANGELES**



**INSTRUCTIONS.**
1 Read claim thoroughly
2 Fill out claim as indicated, attach additional information if necessary
3 Please return this original signed claim and any attachments supporting your claim This form **must** be signed

18-713-

2018 MAR 16 PM 2: 13

TIME STAMP OFFICE USE ONLY

DELIVER OR U S MAIL TO
EXECUTIVE OFFICER, BOARD OF SUPERVISORS, ATTENTION CLAIMS
500 WEST TEMPLE STREET ROOM 383 KENNETH HAHN HALL OF
ADMINISTRATION LOS ANGELES CA 90012

FILED

(213) 974 1440

18-713-1

| | |
|---|---|
| 1 ☒ Mr ☐ Ms ☐ Mrs **LAST NAME** PEREZ **FIRST NAME** CALVIN | 10 WHY DO YOU CLAIM COUNTY IS RESPONSIBLE? |
| 2 ADDRESS OF CLAIMANT/ATTORNEY 5950 CANOGA AVE., SUITE 610 WOODLAND HILLS CA 91367 | PLEASE SEE ATTACHED |

| | |
|---|---|
| **Street**          **City State**          **Zip Code** | |
| HOME TELEPHONE          BUSINESS TELEPHONE (818 702-2570 | |
| 3 CLAIMANT'S BIRTHDATE          4 CLAIMANT'S SOCIAL SECURITY NUMBER | 11 NAMES OF ANY COUNTY EMPLOYEES (AND THEIR DEPARTMENTS) INVOLVED IN INJURY OR DAMAGE (IF APPLICABLE) |
| 5 DATE AND TIME OF INCIDENT 09/19/2017 AT APPROXIMATELY 5:00 AM | NAME GIOVANNI BARTOLETTI          DEPT DEPUTY DISTRICT ATTORNEY |
| | NAME          DEPT |
| 6 WHERE DID DAMAGE OR INJURY OCCUR? | 12. WITNESSES TO DAMAGE OR INJURY LIST ALL PERSONS AND ADDRESSES OF PERSONS KNOWN TO HAVE INFORMATION |
| **Street**          **City State**          **Zip Code** | NAME          PHONE |
| 7 DESCRIBE IN DETAIL HOW DAMAGE OR INJURY OCCURRED | ADDRESS |
| | NAME          PHONE |
| PLEASE SEE ATTACHED | ADDRESS |
| | NAME          PHONE |
| | 13 LIST DAMAGES INCURRED TO DATE (and attach copies of receipts or repair estimate) |
| 8 WERE POLICE OR PARAMEDICS CALLED? YES ☒ NO ☐ | |
| 9 IF PHYSICIAN WAS VISITED DUE TO INJURY INCLUDE DATE OF FIRST VISIT AND PHYSICIAN'S NAME, ADDRESS AND PHONE NUMBER | |
| DATE OF FIRST VISIT          PHYSICIAN'S NAME | TOTAL DAMAGES TO DATE $TBD          TOTAL ESTIMATED PROSPECTIVE DAMAGES $ TBD |
| PHYSICIAN'S ADDRESS          PHONE ( | |

## THIS CLAIM MUST BE SIGNED
### NOTE- PRESENTATION OF A FALSE CLAIM IS A FELONY (PENAL CODE SECTION 72)

## WARNING

CLAIMS FOR DEATH, INJURY TO PERSON OR TO PERSONAL PROPERTY MUST BE FILED NOT LATER THAN 6 MONTHS AFTER THE OCCURENCE. (GOVERNMENT CODE SECTION 911.2)

- ALL OTHER CLAIMS FOR DAMAGES MUST BE FILED NOT LATER THAN ONE YEAR AFTER THE OCCURRENCE (GOVERNMENT CODE SECTION 911.2)

SUBJECT TO CERTAIN EXCEPTIONS, YOU HAVE ONLY SIX (6) MONTHS FROM THE DATE OF THE WRITTEN NOTICE OF YOUR CLAIM TO FILE A COURT ACTION (GOVERNMENT CODE SECTION 945.6)

- IF WRITTEN NOTICE OF REJECTION OF YOUR CLAIM IS NOT GIVEN, YOU HAVE TWO (2) YEARS FROM ACCRUAL TO FILE A COURT ACTION (GOVERNMENT CODE SECTION 945.6)

Calvin
Perez
(a minor)

| 14. PRINT OR TYPE NAME P CHRISTOPHER ARDALAN | DATE 03/15/2018 | 15 SIGNATURE OF CLAIMANT OR PERSON FILING RELATIONSHIP TO CLAIMANT |
|---|---|---|

## COUNTY CLAIM FORM.

### No. 7 - "Describe in detail how the DAMAGE or INJURY occurred?"

On March 16, 2017, Vanessa Perez and her husband, Elivs Pena visited one of their favorite Salvadoran restaurants, Los Molcajetes, in their Westlake neighborhood. As Ms Perez and Mr Pena were minding their own business and awaiting their food order, a man, later identified as Jonathan Quevedo, began to verbally harass and threaten them. Not wanting to have any trouble with anyone, Ms Perez and Mr Pena quickly attempted to exit the restaurant to avoid any further confrontation. However, Jonathan Quevedo quickly escalated the situation and began to physically attack Ms Perez and Mr Pena, striking them with a cane and threatening to kill them. Ms Perez and Mr Pena were able to escape out of the back of the restaurant.

When the LAPD reviewed the surveillance video from inside the restaurant, the officer recognized the assailant as Jonathan Quevedo, a documented gang member with a lengthy criminal history dating back nearly 15 years. Mr Quevedo was found, arrested and charged with three (3) counts of assault with a deadly weapon on or about April 20, 2017.

On or about August 8, Ms Perez and Mr Pena appeared in a downtown LA courtroom for a hearing wherein a protective order was issued. Ms Perez and Mr Pena expressed to the investigating officers and the prosecuting attorneys that they were reluctant to participate in the process and they were fearful that Mr Quevedo's gang would retaliate against them if they cooperated. Ms Perez and Mr Pena were repeatedly assured that protective measure would be taken and they would be safe and have nothing to worry about. However, upon information and belief, prior to the issuance of the protective order, the Los Angeles County Deputy District Attorney who filled out the application for the protective order, filed it without properly removing or otherwise redacting the home and business addresses of the very people he was seeking to protect, Ms Perez and Mr Pena.

Applications for criminal protective orders are sought to protect victims and witnesses of crimes from being stalked, harassed, injured or killed by the criminal defendants they may be testifying against. Criminal protective orders do not require that the address of the victim or witness be provided and for good reason -- it points the criminal defendant directly to where the victim or witness lives, which all but guarantees that the victim/witness' safety is jeopardized. In fact, such conduct by an attorney is not only prohibited, but can amount to a crime. Per Penal Code section 1054 2, "no attorney may disclose or permit to be disclosed to a defendant, members of the defendant's family, or anyone else, the address or telephone number of a victim or witness[ ]"

Here, a Los Angeles County Deputy District Attorney violated Penal Code section 1054 2 by providing addresses for Ms Perez and Mr Pena on the protective order. Not only should this prosecutor have known that this information would become public record if not withdrawn or redacted, but he should have known that Mr Quevedo or any member of Mr Quevedo's gang

could access this information, track Ms Pena and/or Mr Perez down, and try to injure or kill them or their family in an attempt to silence their testimony

On or about September 19, 2017, in the early morning hours, Mr Quevedo came to the home address, which had been provided by the Los Angeles County Prosecutor, of Ms Perez and Mr Pena in a clear and blatant attempt to intimidate and cause them fear and bodily harm in order to prevent Ms Perez and Mr Pena from testifying against him in any criminal matter

On or about September 19, 2017, Mr Quevedo fired his hand-gun into a vehicle occupied by Ms Perez and Mr Pena's adult son, Joshua Perez   Joshua Perez's wife, Deana Varo, was also in the vehicle   Joshua Perez was grazed by a bullet fired by Mr Quevedo   Ms Varo was struck three (3) times with bullets fired from Mr Quevedo's gun

Ms Varo and Joshua Perez both suffered extreme physical, mental and emotional injuries as the result of the Los Angeles County Prosecutor's actions   Ms Vanessa Perez and Mr Elivs Pena suffered extreme mental and emotional injuries as the result of the Los Angeles County Prosecutor's actions

Out of fear for their own lives and well-being, the entire family, Vanessa Perez, Elivs Pena, Joshua Perez, Deana Varo (their 2 minor children), Calvin Perez and Justin Perez were all forced to immediately flee the safety of their home and enter protective custody so the gang would not attempt to exact any additional revenge or retribution

Since the very beginning of the nightmare ordeal, Ms Perez and Mr Pena have lived in constant fear that Mr Quevedo and his gang would try to further harm or kill them or their family   They were so fearful that they never told their family about the initial assault, hoping it would all just fade away and they could go on with their lives   Their worst fears were realized on September 19, 2017 when Quevedo tried to kill Joshua Perez and Deana Varo   Since that day, the entire family has been living a constant nightmare   They have been completely uprooted from the life they once knew, forced to relocate to an entirely different and unfamiliar neighborhood   They are afraid to leave their house   They are afraid that every individual they see is a potential gang associate of Jonathan Quevedo   They are deathly afraid that the very people that were supposed to protect them initially will betray their trust again, with deadly results

### No. 10 - "Why do you claim the County is responsible?"

Per Government Code section 815 6, the County is responsible because it violated a mandatory duty imposed on its employees under Penal Code section 841 5 to not disclose the address or telephone number of any victim or witness to any person who may be a defendant in a criminal action

Penal Code section 841 5 imposes a mandatory duty on County law enforcement, which necessarily includes District Attorneys, not to disclose such information   Plaintiff is informed

and believes that a County of Los Angeles Deputy District Attorney violated this mandatory duty by failing to removing or otherwise redacting the home and business addresses of his assault victims, Ms Perez and Mr Pena

Plaintiff is informed and believes that the purpose of Penal Code section 841 5 is to protect victims, witnesses, and/or the families of victims and/or witness to a crime, from suffering injury and/or death Plaintiffs are informed and believe that as a direct consequence of the County's failure to comply with the mandatory duty imposed by Penal Code section 841 5, Mr Quevedo was able to track down the home of his victims and open fire on a vehicle occupied by Ms Perez and Mr Pena's adult son, Joshua Perez and Joshua Perez's wife, Deana Varo, in a brazen attempt to prevent Ms Perez and Mr Pena from testifying against him in any criminal matter

# CLAIM FOR DAMAGES
## TO PERSON OR PROPERTY

COUNTY OF LOS ANGELES



**INSTRUCTIONS.**
1. Read claim thoroughly
2. Full out claim as indicated, attach additional information if necessary
3. Please return this original signed claim and any attachments supporting your claim This form **must** be signed.

DELIVER OR U S MAIL TO
EXECUTIVE OFFICER BOARD OF SUPERVISORS ATTENTION CLAIMS
500 WEST TEMPLE STREET ROOM 383  KENNETH HAHN HALL OF
ADMINISTRATION LOS ANGELES CA 90012

`18~716--`

2018 MAR 16  PM 2:13

FILED

(213) 974-1440



| 1 ☐ Mr ☑ Ms ☐ Mrs  LAST NAME  VARO | FIRST NAME  DEANA | 10. WHY DO YOU CLAIM COUNTY IS RESPONSIBLE? |
|---|---|---|

2 ADDRESS OF CLAIMANT / ATTORNEY
5950 CANOGA AVE  SUITE 610 WOODLAND HILLS CA  91367

Street          City State          Zip Code

PLEASE SEE ATTACHED

| HOME TELEPHONE. | BUSINESS TELEPHONE. (818 702-2570 |
|---|---|

3 CLAIMANT'S BIRTHDATE.
06/01/1995

4 CLAIMANT'S SOCIAL SECURITY NUMBER

11 NAMES OF ANY COUNTY EMPLOYEES (AND THEIR DEPARTMENTS) INVOLVED IN INJURY OR DAMAGE (IF APPLICABLE)

5 DATE AND TIME OF INCIDENT
09/19/2017 AT APPROXIMATELY 5 00 AM

| NAME  GIOVANNI BARTOLETTI | DEPT  DEPUTY DISTRICT ATTORNEY |
|---|---|
| NAME | DEPT |

6 WHERE DID DAMAGE OR INJURY OCCUR?

Street          City State          Zip Code

12 WITNESSES TO DAMAGE OR INJURY  LIST ALL PERSONS AND ADDRESSES OF PERSONS KNOWN TO HAVE INFORMATION

| NAME | PHONE |
|---|---|

7 DESCRIBE IN DETAIL HOW DAMAGE OR INJURY OCCURRED

ADDRESS

| NAME | PHONE |
|---|---|

PLEASE SEE ATTACHED

ADDRESS

| NAME | PHONE |
|---|---|

13 LIST DAMAGES INCURRED TO DATE (and attach copies of receipts or repair estimate)

8 WERE POLICE OR PARAMEDICS CALLED?
YES ☒    NO ☐

9 IF PHYSICIAN WAS VISITED DUE TO INJURY  INCLUDE DATE OF FIRST VISIT AND PHYSICIAN'S NAME, ADDRESS AND PHONE NUMBER.

| DATE OF FIRST VISIT  09/19/2017 | PHYSICIAN'S NAME |
|---|---|

TOTAL DAMAGES TO DATE.
$TBD

TOTAL ESTIMATED PROSPECTIVE DAMAGES
$ TBD

| PHYSICIAN'S ADDRESS  Hollywood Presbyterian Medical Center | PHONE  (323 ) 913-4970 |
|---|---|

### THIS CLAIM MUST BE SIGNED
### NOTE· PRESENTATION OF A FALSE CLAIM IS A FELONY (PENAL CODE SECTION 72)

## WARNING

CLAIMS FOR DEATH, INJURY TO PERSON OR TO PERSONAL PROPERTY MUST BE FILED NOT LATER THAN 6 MONTHS AFTER THE OCCURENCE (GOVERNMENT CODE SECTION 911.2)

ALL OTHER CLAIMS FOR DAMAGES MUST BE FILED NOT LATER THAN ONE YEAR AFTER THE OCCURRENCE. (GOVERNMENT CODE SECTION 911.2)

SUBJECT TO CERTAIN EXCEPTIONS, YOU HAVE ONLY SIX (6) MONTHS FROM THE DATE OF THE WRITTEN NOTICE OF YOUR CLAIM TO FILE A COURT ACTION  (GOVERNMENT CODE SECTION 945 6)

- IF WRITTEN NOTICE OF REJECTION OF YOUR CLAIM IS NOT GIVEN, YOU HAVE TWO (2) YEARS FROM ACCRUAL OF TO FILE A COURT ACTION. (GOVERNMENT CODE SECTION 945.6)

*Deana*
*Varo*

| 14 PRINT OR TYPE NAME  P CHRISTOPHER ARDALAN | DATE  03/15/2018 | 15 SIGNATURE OF CLAIMANT OR PERSON FILING ON RELATIONSHIP TO CLAIMANT |
|---|---|---|

## COUNTY CLAIM FORM.

### No. 7 - "Describe in detail how the DAMAGE or INJURY occurred?"

On March 16, 2017, Vanessa Perez and her husband, Eldis Pena visited one of their favorite Salvadoran restaurants, Los Molcajetes, in their Westlake neighborhood. As Ms. Perez and Mr. Pena were minding their own business and awaiting their food order, a man, later identified as Jonathan Quevedo, began to verbally harass and threaten them. Not wanting to have any trouble with anyone, Ms. Perez and Mr. Pena quickly attempted to exit the restaurant to avoid any further confrontation. However, Jonathan Quevedo quickly escalated the situation and began to physically attack Ms. Perez and Mr. Pena, striking them with a cane and threatening to kill them. Ms. Perez and Mr. Pena were able to escape out of the back of the restaurant.

When the LAPD reviewed the surveillance video from inside the restaurant, the officer recognized the assailant as Jonathan Quevedo, a documented gang member with a lengthy criminal history dating back nearly 15 years. Mr. Quevedo was found, arrested and charged with three (3) counts of assault with a deadly weapon on or about April 20, 2017.

On or about August 8, Ms. Perez and Mr. Pena appeared in a downtown LA courtroom for a hearing wherein a protective order was issued. Ms. Perez and Mr. Pena expressed to the investigating officers and the prosecuting attorneys that they were reluctant to participate in the process and they were fearful that Mr. Quevedo's gang would retaliate against them if they cooperated. Ms. Perez and Mr. Pena were repeatedly assured that protective measure would be taken and they would be safe and have nothing to worry about. However, upon information and belief, prior to the issuance of the protective order, the Los Angeles County Deputy District Attorney who filled out the application for the protective order, filed it without properly removing or otherwise redacting the home and business addresses of the very people he was seeking to protect, Ms. Perez and Mr. Pena.

Applications for criminal protective orders are sought to protect victims and witnesses of crimes from being stalked, harassed, injured or killed by the criminal defendants they may be testifying against. Criminal protective orders do not require that the address of the victim or witness be provided and for good reason -- it points the criminal defendant directly to where the victim or witness lives, which all but guarantees that the victim/witness' safety is jeopardized. In fact, such conduct by an attorney is not only prohibited, but can amount to a crime. Per Penal Code section 1054.2, "no attorney may disclose or permit to be disclosed to a defendant, members of the defendant's family, or anyone else, the address or telephone number of a victim or witness[ ]"

Here, a Los Angeles County Deputy District Attorney violated Penal Code section 1054.2 by providing addresses for Ms. Perez and Mr. Pena on the protective order. Not only should this prosecutor have known that this information would become public record if not withdrawn or redacted, but he should have known that Mr. Quevedo or any member of Mr. Quevedo's gang

could access this information, track Ms Pena and/or Mr Perez down, and try to injure or kill them or their family in an attempt to silence their testimony

On or about September 19, 2017, in the early morning hours, Mr Quevedo came to the home address, which had been provided by the Los Angeles County Prosecutor, of Ms Perez and Mr Pena in a clear and blatant attempt to intimidate and cause them fear and bodily harm in order to prevent Ms Perez and Mr Pena from testifying against him in any criminal matter

On or about September 19, 2017, Mr Quevedo fired his hand-gun into a vehicle occupied by Ms Perez and Mr Pena's adult son, Joshua Perez   Joshua Perez's wife, Deana Varo, was also in the vehicle   Joshua Perez was grazed by a bullet fired by Mr Quevedo   Ms Varo was struck three (3) times with bullets fired from Mr Quevedo's gun

Ms Varo and Joshua Perez both suffered extreme physical, mental and emotional injuries as the result of the Los Angeles County Prosecutor's actions   Ms Vanessa Perez and Mr Eldis Pena suffered extreme mental and emotional injuries as the result of the Los Angeles County Prosecutor's actions

Out of fear for their own lives and well-being, the entire family, Vanessa Perez, Eldis Pena, Joshua Perez, Deana Varo (their 2 minor children), Calvin Perez and Justin Perez were all forced to immediately flee the safety of their home and enter protective custody so the gang would not attempt to exact any additional revenge or retribution

Since the very beginning of the nightmare ordeal, Ms Perez and Mr Pena have lived in constant fear that Mr Quevedo and his gang would try to further harm or kill them or their family   They were so fearful that they never told their family about the initial assault, hoping it would all just fade away and they could go on with their lives   Their worst fears were realized on September 19, 2017 when Quevedo tried to kill Joshua Perez and Deana Varo   Since that day, the entire family has been living a constant nightmare   They have been completely uprooted from the life they once knew, forced to relocate to an entirely different and unfamiliar neighborhood   They are afraid to leave their house   They are afraid that every individual they see is a potential gang associate of Jonathan Quevedo   They are deathly afraid that the very people that were supposed to protect them initially will betray their trust again, with deadly results

### No. 10 - "Why do you claim the County is responsible?"

Per Government Code section 815 6, the County is responsible because it violated a mandatory duty imposed on its employees under Penal Code section 841 5 to not disclose the address or telephone number of any victim or witness to any person who may be a defendant in a criminal action

Penal Code section 841 5 imposes a mandatory duty on County law enforcement, which necessarily includes District Attorneys, not to disclose such information   Plaintiff is informed

and believes that a County of Los Angeles Deputy District Attorney violated this mandatory duty by failing to removing or otherwise redacting the home and business addresses of his assault victims, Ms Perez and Mr Pena

Plaintiff is informed and believes that the purpose of Penal Code section 841 5 is to protect victims, witnesses, and/or the families of victims and/or witness to a crime, from suffering injury and/or death   Plaintiffs are informed and believe that as a direct consequence of the County's failure to comply with the mandatory duty imposed by Penal Code section 841 5, Mr Quevedo was able to track down the home of his victims and open fire on a vehicle occupied by Ms Perez and Mr Pena's adult son, Joshua Perez and Joshua Perez's wife, Deana Varo, in a brazen attempt to prevent Ms Perez and Mr Pena from testifying against him in any criminal matter



BOARD OF SUPERVISORS
COUNTY OF LOS ANGELES

# CLAIM FOR DAMAGES
## TO PERSON OR PROPERTY

COUNTY OF LOS ANGELES



**INSTRUCTIONS:**
1. Read claim thoroughly.
2. Fill out claim as indicated; attach additional information if necessary.
3. Please return this original signed claim and any attachments supporting your claim. This form **must** be signed.

**DELIVER OR U.S MAIL TO:**
EXECUTIVE OFFICER, BOARD OF SUPERVISORS, ATTENTION: CLAIMS
500 WEST TEMPLE STREET, ROOM 383, KENNETH HAHN HALL OF
ADMINISTRATION, LOS ANGELES, CA 90012
(213) 974-1440

18 – 711 –

2018 MAR 16 PM 2: 14

FILED

| 1. ☒ Mr. ☐ Ms. ☐ Mrs. | LAST NAME PEREZ | FIRST NAME JOSHUA |
|---|---|---|

**2. ADDRESS OF CLAIMANT / ATTORNEY**
5950 CANOGA AVE., SUITE 610 WOODLAND HILLS, CA  91367
Street          City, State          Zip Code

| HOME TELEPHONE: | BUSINESS TELEPHONE: (818) 702-2570 |
|---|---|

**3. CLAIMANT'S BIRTHDATE:**
07/17/1993

**4. CLAIMANT'S SOCIAL SECURITY NUMBER**

**5. DATE AND TIME OF INCIDENT**
09/19/2017 AT APPROXIMATELY 5:00 AM

**6. WHERE DID DAMAGE OR INJURY OCCUR?**
Street          City, State          Zip Code

**7. DESCRIBE IN DETAIL HOW DAMAGE OR INJURY OCCURRED:**

PLEASE SEE ATTACHED

**8. WERE POLICE OR PARAMEDICS CALLED?**   YES ☒   NO ☐

**9. IF PHYSICIAN WAS VISITED DUE TO INJURY, INCLUDE DATE OF FIRST VISIT AND PHYSICIAN'S NAME, ADDRESS AND PHONE NUMBER.**

| DATE OF FIRST VISIT 09/19/2017 | PHYSICIAN'S NAME |
|---|---|
| PHYSICIAN'S ADDRESS Hollywood Presbyterian Medical Center | PHONE (323) 913-4970 |

**10. WHY DO YOU CLAIM COUNTY IS RESPONSIBLE?**

PLEASE SEE ATTACHED

**11. NAMES OF ANY COUNTY EMPLOYEES (AND THEIR DEPARTMENTS) INVOLVED IN INJURY OR DAMAGE (IF APPLICABLE):**

| NAME GIOVANNI BARTOLETTI | DEPT. DEPUTY DISTRICT ATTORNEY |
|---|---|
| NAME | DEPT. |

**12. WITNESSES TO DAMAGE OR INJURY: LIST ALL PERSONS AND ADDRESSES OF PERSONS KNOWN TO HAVE INFORMATION:**

| NAME | PHONE |
|---|---|
| ADDRESS | |
| NAME | PHONE |
| ADDRESS | |
| NAME | PHONE |

**13. LIST DAMAGES INCURRED TO DATE (and attach copies of receipts or repair estimate):**

| TOTAL DAMAGES TO DATE: $ TBD | TOTAL ESTIMATED PROSPECTIVE DAMAGES: $ TBD |
|---|---|

## THIS CLAIM MUST BE SIGNED
### NOTE: PRESENTATION OF A FALSE CLAIM IS A FELONY (PENAL CODE SECTION 72)

## WARNING

- CLAIMS FOR DEATH, INJURY TO PERSON OR TO PERSONAL PROPERTY MUST BE FILED NOT LATER THAN 6 MONTHS AFTER THE OCCURRENCE. (GOVERNMENT CODE SECTION 911.2)

- ALL OTHER CLAIMS FOR DAMAGES MUST BE FILED NOT LATER THAN ONE YEAR AFTER THE OCCURRENCE. (GOVERNMENT CODE SECTION 911.2)

- SUBJECT TO CERTAIN EXCEPTIONS, YOU HAVE ONLY SIX (6) MONTHS FROM THE DATE OF THE WRITTEN NOTICE OF REJECTION OF YOUR CLAIM TO FILE A COURT ACTION. (GOVERNMENT CODE SECTION 945.6)

- IF WRITTEN NOTICE OF REJECTION OF YOUR CLAIM IS NOT GIVEN, YOU HAVE TWO (2) YEARS FROM ACCRUAL OF THE CAUSE OF ACTION TO FILE A COURT ACTION. (GOVERNMENT CODE SECTION 945.6)

| 14. PRINT OR TYPE NAME P. CHRISTOPHER ARDALAN | DATE 3/15/18 | 15. SIGNATURE OF CLAIMANT OR PERSON FILING ON HIS/HER BEHALF GIVING RELATIONSHIP TO CLAIMANT: Attorney for Joshua Perez |
|---|---|---|

REVISED 01/06

## COUNTY CLAIM FORM:

**No. 7 - "Describe in detail how the DAMAGE or INJURY occurred?"**

On March 16, 2017, Vanessa Perez and her husband, Eldis Pena visited one of their favorite Salvadoran restaurants, Los Molcajetes, in their Westlake neighborhood. As Ms. Perez and Mr. Pena were minding their own business and awaiting their food order, a man, later identified as Jonathan Quevedo, began to verbally harass and threaten them. Not wanting to have any trouble with anyone, Ms. Perez and Mr. Pena quickly attempted to exit the restaurant to avoid any further confrontation. However, Jonathan Quevedo quickly escalated the situation and began to physically attack Ms. Perez and Mr. Pena, striking them with a cane and threatening to kill them. Ms. Perez and Mr. Pena were able to escape out of the back of the restaurant.

When the LAPD reviewed the surveillance video from inside the restaurant, the officer recognized the assailant as Jonathan Quevedo, a documented gang member with a lengthy criminal history dating back nearly 15 years. Mr. Quevedo was found, arrested and charged with three (3) counts of assault with a deadly weapon on or about April 20, 2017.

On or about August 8, Ms. Perez and Mr. Pena appeared in a downtown LA courtroom for a hearing wherein a protective order was issued. Ms. Perez and Mr. Pena expressed to the investigating officers and the prosecuting attorneys that they were reluctant to participate in the process and they were fearful that Mr. Quevedo's gang would retaliate against them if they cooperated. Ms. Perez and Mr. Pena were repeatedly assured that protective measure would be taken and they would be safe and have nothing to worry about. However, upon information and belief, prior to the issuance of the protective order, the Los Angeles County Deputy District Attorney who filled out the application for the protective order, filed it without properly removing or otherwise redacting the home and business addresses of the very people he was seeking to protect, Ms. Perez and Mr. Pena.

Applications for criminal protective orders are sought to protect victims and witnesses of crimes from being stalked, harassed, injured or killed by the criminal defendants they may be testifying against. Criminal protective orders do not require that the address of the victim or witness be provided and for good reason -- it points the criminal defendant directly to where the victim or witness lives, which all but guarantees that the victim/witness' safety is jeopardized. In fact, such conduct by an attorney is not only prohibited, but can amount to a crime. Per Penal Code section 1054.2, "no attorney may disclose or permit to be disclosed to a defendant, members of the defendant's family, or anyone else, the address or telephone number of a victim or witness[.]"

Here, a Los Angeles County Deputy District Attorney violated Penal Code section 1054.2 by providing addresses for Ms. Perez and Mr. Pena on the protective order. Not only should this prosecutor have known that this information would become public record if not withdrawn or redacted, but he should have known that Mr. Quevedo or any member of Mr. Quevedo's gang

could access this information, track Ms. Pena and/or Mr. Perez down, and try to injure or kill them or their family in an attempt to silence their testimony.

On or about September 19, 2017, in the early morning hours, Mr. Quevedo came to the home address, which had been provided by the Los Angeles County Prosecutor, of Ms. Perez and Mr. Pena in a clear and blatant attempt to intimidate and cause them fear and bodily harm in order to prevent Ms. Perez and Mr. Pena from testifying against him in any criminal matter.

On or about September 19, 2017, Mr. Quevedo fired his hand-gun into a vehicle occupied by Ms. Perez and Mr. Pena's adult son, Joshua Perez. Joshua Perez's wife, Deana Varo, was also in the vehicle. Joshua Perez was grazed by a bullet fired by Mr. Quevedo. Ms. Varo was struck three (3) times with bullets fired from Mr. Quevedo's gun.

Ms. Varo and Joshua Perez both suffered extreme physical, mental and emotional injuries as the result of the Los Angeles County Prosecutor's actions. Ms. Vanessa Perez and Mr. Eldis Pena suffered extreme mental and emotional injuries as the result of the Los Angeles County Prosecutor's actions.

Out of fear for their own lives and well-being, the entire family, Vanessa Perez, Eldis Pena, Joshua Perez, Deana Varo (their 2 minor children), Calvin Perez and Justin Perez were all forced to immediately flee the safety of their home and enter protective custody so the gang would not attempt to exact any additional revenge or retribution.

Since the very beginning of the nightmare ordeal, Ms. Perez and Mr. Pena have lived in constant fear that Mr. Quevedo and his gang would try to further harm or kill them or their family. They were so fearful that they never told their family about the initial assault, hoping it would all just fade away and they could go on with their lives. Their worst fears were realized on September 19, 2017 when Quevedo tried to kill Joshua Perez and Deana Varo. Since that day, the entire family has been living a constant nightmare. They have been completely uprooted from the life they once knew, forced to relocate to an entirely different and unfamiliar neighborhood. They are afraid to leave their house. They are afraid that every individual they see is a potential gang associate of Jonathan Quevedo. They are deathly afraid that the very people that were supposed to protect them initially will betray their trust again, with deadly results.

### No. 10 - "Why do you claim the County is responsible?"

Per Government Code section 815.6, the County is responsible because it violated a mandatory duty imposed on its employees under Penal Code section 841.5 to not disclose the address or telephone number of any victim or witness to any person who may be a defendant in a criminal action.

Penal Code section 841.5 imposes a mandatory duty on County law enforcement, which necessarily includes District Attorneys, not to disclose such information. Plaintiff is informed

and believes that a County of Los Angeles Deputy District Attorney violated this mandatory duty by failing to removing or otherwise redacting the home and business addresses of his assault victims, Ms. Perez and Mr. Pena.

Plaintiff is informed and believes that the purpose of Penal Code section 841.5 is to protect victims, witnesses, and/or the families of victims and/or witness to a crime, from suffering injury and/or death.  Plaintiffs are informed and believe that as a direct consequence of the County's failure to comply with the mandatory duty imposed by Penal Code section 841.5, Mr. Quevedo was able to track down the home of his victims and open fire on a vehicle occupied by Ms. Perez and Mr. Pena's adult son, Joshua Perez and Joshua Perez's wife, Deana Varo, in a brazen attempt to prevent Ms. Perez and Mr. Pena from testifying against him in any criminal matter.

# CLAIM FOR DAMAGES
## TO PERSON OR PROPERTY

COUNTY OF LOS ANGELES

BOARD OF SUPERVISORS
COUNTY OF LOS ANGELES

**INSTRUCTIONS**
1. Read claim thoroughly
2. Fill out claim as indicated, attach additional information if necessary
3. Please return this original signed claim and any attachments supporting your claim This form **must** be signed

DELIVER OR U.S. MAIL TO
EXECUTIVE OFFICER, BOARD OF SUPERVISORS, ATTENTION CLAIMS
500 WEST TEMPLE STREET ROOM 383 KENNETH HAHN HALL OF
ADMINISTRATION LOS ANGELES, CA 90012

18-714--

2018 MAR 16 PM 2: 12

FILED

18-714

(213) 974-1440

| | |
|---|---|
| ☒ Mr ☐  Ms ☐  Mrs  LAST NAME  PENA  FIRST NAME  ELIVS | 10. WHY DO YOU CLAIM COUNTY IS RESPONSIBLE?  PLEASE SEE ATTACHED |
| 2 ADDRESS OF CLAIMANT/ ATTORNEY  5950 CANOGA AVE. SUITE 610 WOODLAND HILLS CA 91367  Street          City State          Zip Code | |
| HOME TELEPHONE            BUSINESS TELEPHONE  (818) 702-2570 | |
| 3 CLAIMANT'S BIRTHDATE:      4 CLAIMANT'S SOCIAL SECURITY NUMBER | 11  NAMES OF ANY COUNTY EMPLOYEES (AND THEIR DEPARTMENTS)  INVOLVED IN INJURY OR DAMAGE (IF APPLICABLE) |
| 5 DATE AND TIME OF INCIDENT  09/19/2017 AT APPROXIMATELY 5:00 AM | NAME  GIOVANNI BARTOLETTI    DEPT  DEPUTY DISTRICT ATTORNEY |
| | NAME            DEPT |
| 6 WHERE DID DAMAGE OR INJURY OCCUR?  Street          City State          Zip Code | 12  WITNESSES TO DAMAGE OR INJURY LIST ALL PERSONS AND ADDRESSES  OF PERSONS KNOWN TO HAVE INFORMATION.  NAME            PHONE |
| 7 DESCRIBE IN DETAIL HOW DAMAGE OR INJURY OCCURRED:     PLEASE SEE ATTACHED | ADDRESS  NAME            PHONE  ADDRESS  NAME            PHONE |
| | 13. LIST DAMAGES INCURRED TO DATE (and attach copies of receipts or repair  estimate) |
| 8. WERE POLICE OR PARAMEDICS CALLED?    YES ☒    NO ☐ | |
| 9  IF PHYSICIAN WAS VISITED DUE TO INJURY INCLUDE DATE OF FIRST VISIT AND  PHYSICIAN'S NAME, ADDRESS AND PHONE NUMBER. | |
| DATE OF FIRST VISIT      PHYSICIAN'S NAME | TOTAL DAMAGES TO DATE    TOTAL ESTIMATED PROSPECTIVE  DAMAGES |
| PHYSICIAN'S ADDRESS      PHONE  ( ) | $ TBD            $ TBD |

**THIS CLAIM MUST BE SIGNED**
**NOTE: PRESENTATION OF A FALSE CLAIM IS A FELONY (PENAL CODE SECTION 72)**

## WARNING

CLAIMS FOR DEATH, INJURY TO PERSON OR TO PERSONAL PROPERTY MUST BE FILED NOT LATER THAN 6 MONTHS AFTER THE OCCURRENCE. (GOVERNMENT CODE SECTION 911.2)

ALL OTHER CLAIMS FOR DAMAGES MUST BE FILED NOT LATER THAN ONE YEAR AFTER THE OCCURRENCE. (GOVERNMENT CODE SECTION 911.2)

SUBJECT TO CERTAIN EXCEPTIONS, YOU HAVE ONLY SIX (6) MONTHS FROM THE DATE OF THE WRITTEN NOTICE OF REJECTION OF YOUR CLAIM TO FILE A COURT ACTION  (GOVERNMENT CODE SECTION 945.6)

- IF WRITTEN NOTICE OF REJECTION OF YOUR CLAIM IS NOT GIVEN, YOU HAVE TWO (2) YEARS FROM ACCRUAL  TO FILE A COURT ACTION  (GOVERNMENT CODE SECTION 945.6)

Elivs Pena
AKa
Eldis Pena

| 14  PRINT OR TYPE NAME  P CHRISTOPHER ARDALAN | DATE  03/15/2018 | 15  SIGNATURE OF CLAIMANT OR PERSON FILING  RELATIONSHIP TO CLAIMANT |
|---|---|---|

## COUNTY CLAIM FORM

**No. 7 - "Describe in detail how the DAMAGE or INJURY occurred?"**

On March 16, 2017, Vanessa Perez and her husband, Elivs Pena visited one of their favorite Salvadoran restaurants, Los Molcajetes, in their Westlake neighborhood. As Ms Perez and Mr Pena were minding their own business and awaiting their food order, a man, later identified as Jonathan Quevedo, began to verbally harass and threaten them. Not wanting to have any trouble with anyone, Ms Perez and Mr Pena quickly attempted to exit the restaurant to avoid any further confrontation. However, Jonathan Quevedo quickly escalated the situation and began to physically attack Ms Perez and Mr Pena, striking them with a cane and threatening to kill them. Ms Perez and Mr Pena were able to escape out of the back of the restaurant.

When the LAPD reviewed the surveillance video from inside the restaurant, the officer recognized the assailant as Jonathan Quevedo, a documented gang member with a lengthy criminal history dating back nearly 15 years. Mr Quevedo was found, arrested and charged with three (3) counts of assault with a deadly weapon on or about April 20, 2017.

On or about August 8, Ms Perez and Mr Pena appeared in a downtown LA courtroom for a hearing wherein a protective order was issued. Ms Perez and Mr Pena expressed to the investigating officers and the prosecuting attorneys that they were reluctant to participate in the process and they were fearful that Mr Quevedo's gang would retaliate against them if they cooperated. Ms Perez and Mr Pena were repeatedly assured that protective measure would be taken and they would be safe and have nothing to worry about. However, upon information and belief, prior to the issuance of the protective order, the Los Angeles County Deputy District Attorney who filled out the application for the protective order, filed it without properly removing or otherwise redacting the home and business addresses of the very people he was seeking to protect, Ms Perez and Mr Pena.

Applications for criminal protective orders are sought to protect victims and witnesses of crimes from being stalked, harassed, injured or killed by the criminal defendants they may be testifying against. Criminal protective orders do not require that the address of the victim or witness be provided and for good reason -- it points the criminal defendant directly to where the victim or witness lives, which all but guarantees that the victim/witness' safety is jeopardized. In fact, such conduct by an attorney is not only prohibited, but can amount to a crime. Per Penal Code section 1054 2, 'no attorney may disclose or permit to be disclosed to a defendant, members of the defendant's family, or anyone else, the address or telephone number of a victim or witness[ ]"

Here, a Los Angeles County Deputy District Attorney violated Penal Code section 1054 2 by providing addresses for Ms Perez and Mr Pena on the protective order. Not only should this prosecutor have known that this information would become public record if not withdrawn or redacted, but he should have known that Mr Quevedo or any member of Mr Quevedo's gang

could access this information, track Ms Pena and/or Mr Perez down, and try to injure or kill them or their family in an attempt to silence their testimony

On or about September 19, 2017, in the early morning hours, Mr Quevedo came to the home address, which had been provided by the Los Angeles County Prosecutor, of Ms Perez and Mr Pena in a clear and blatant attempt to intimidate and cause them fear and bodily harm in order to prevent Ms Perez and Mr Pena from testifying against him in any criminal matter

On or about September 19, 2017, Mr Quevedo fired his hand-gun into a vehicle occupied by Ms Perez and Mr Pena's adult son, Joshua Perez  Joshua Perez's wife, Deana Varo, was also in the vehicle  Joshua Perez was grazed by a bullet fired by Mr Quevedo  Ms Varo was struck three (3) times with bullets fired from Mr Quevedo's gun

Ms Varo and Joshua Perez both suffered extreme physical, mental and emotional injuries as the result of the Los Angeles County Prosecutor's actions  Ms Vanessa Perez and Mr Elivs Pena suffered extreme mental and emotional injuries as the result of the Los Angeles County Prosecutor's actions

Out of fear for their own lives and well-being, the entire family, Vanessa Perez, Elivs Pena, Joshua Perez, Deana Varo (their 2 minor children), Calvin Perez and Justin Perez were all forced to immediately flee the safety of their home and enter protective custody so the gang would not attempt to exact any additional revenge or retribution

Since the very beginning of the nightmare ordeal, Ms Perez and Mr Pena have lived in constant fear that Mr Quevedo and his gang would try to further harm or kill them or their family  They were so fearful that they never told their family about the initial assault, hoping it would all just fade away and they could go on with their lives  Their worst fears were realized on September 19, 2017 when Quevedo tried to kill Joshua Perez and Deana Varo  Since that day, the entire family has been living a constant nightmare  They have been completely uprooted from the life they once knew, forced to relocate to an entirely different and unfamiliar neighborhood  They are afraid to leave their house  They are afraid that every individual they see is a potential gang associate of Jonathan Quevedo  They are deathly afraid that the very people that were supposed to protect them initially will betray their trust again, with deadly results

### No. 10 - "Why do you claim the County is responsible?"

Per Government Code section 815 6, the County is responsible because it violated a mandatory duty imposed on its employees under Penal Code section 841 5 to not disclose the address or telephone number of any victim or witness to any person who may be a defendant in a criminal action

Penal Code section 841 5 imposes a mandatory duty on County law enforcement, which necessarily includes District Attorneys, not to disclose such information  Plaintiff is informed

and believes that a County of Los Angeles Deputy District Attorney violated this mandatory duty by failing to removing or otherwise redacting the home and business addresses of his assault victims, Ms Perez and Mr Pena

Plaintiff is informed and believes that the purpose of Penal Code section 841 5 is to protect victims, witnesses, and/or the families of victims and/or witness to a crime, from suffering injury and/or death   Plaintiffs are informed and believe that as a direct consequence of the County's failure to comply with the mandatory duty imposed by Penal Code section 841 5, Mr Quevedo was able to track down the home of his victims and open fire on a vehicle occupied by Ms Perez and Mr Pena's adult son, Joshua Perez and Joshua Perez's wife, Deana Varo, in a brazen attempt to prevent Ms Perez and Mr Pena from testifying against him in any criminal matter

# CLAIM FOR DAMAGES
# TO PERSON OR PROPERTY

COUNTY OF LOS ANGELES



**INSTRUCTIONS.**
1 Read claim thoroughly
2 Fill out claim as indicated, attach additional information if necessary
3 Please return this original signed claim and any attachments supporting your claim This form **must** be signed

DELIVER OR U.S MAIL TO
EXECUTIVE OFFICER, BOARD OF SUPERVISORS ATTENTION CLAIMS
500 WEST TEMPLE STREET ROOM 383 KENNETH HAHN HALL OF
ADMINISTRATION LOS ANGELES CA 90012

18-712--

2018 MAR 16 PM 2 14

FILED

(213) 974-1440

| Mr ☒ Ms ☐ Mrs | LAST NAME PEREZ | FIRST NAME VANESSA | 10 WHY DO YOU CLAIM COUNTY IS RESPONSIBLE? |
|---|---|---|---|

**2 ADDRESS OF CLAIMANT/ ATTORNEY**
5950 CANOGA AVE., SUITE 610 WOODLAND HILLS, CA 91367
Street / City State / Zip Code

PLEASE SEE ATTACHED

| HOME TELEPHONE | BUSINESS TELEPHONE (818) 702-2570 |
|---|---|

| 3 CLAIMANT'S BIRTHDATE 07/17/1978 | 4 CLAIMANT'S SOCIAL SECURITY NUMBER |
|---|---|

**11 NAMES OF ANY COUNTY EMPLOYEES (AND THEIR DEPARTMENTS) INVOLVED IN INJURY OR DAMAGE (IF APPLICABLE)**

**5 DATE AND TIME OF INCIDENT**
09/19/2017 AT APPROXIMATELY 5:00 AM

| NAME GIOVANNI BARTOLETTI | DEPT DEPUTY DISTRICT ATTORNEY |
|---|---|
| NAME | DEPT |

**6 WHERE DID DAMAGE OR INJURY OCCUR?**

Street / City State / Zip Code

**12 WITNESSES TO DAMAGE OR INJURY LIST ALL PERSONS AND ADDRESSES OF PERSONS KNOWN TO HAVE INFORMATION**

| NAME | PHONE |
|---|---|
| ADDRESS | |

**7 DESCRIBE IN DETAIL HOW DAMAGE OR INJURY OCCURRED**

PLEASE SEE ATTACHED

| NAME | PHONE |
|---|---|
| ADDRESS | |

| NAME | PHONE |
|---|---|

**13 LIST DAMAGES INCURRED TO DATE (and attach copies of receipts or repair estimate)**

**8 WERE POLICE OR PARAMEDICS CALLED?**
YES ☒ NO ☐

**9 IF PHYSICIAN WAS VISITED DUE TO INJURY INCLUDE DATE OF FIRST VISIT AND PHYSICIAN'S NAME, ADDRESS AND PHONE NUMBER.**

| DATE OF FIRST VISIT FEBRUARY 2018 | PHYSICIAN'S NAME DR CLIFF SABBOTH |
|---|---|
| PHYSICIAN'S ADDRESS | PHONE (810) 701-7013 |

| TOTAL DAMAGES TO DATE $TBD | TOTAL ESTIMATED PROSPECTIVE DAMAGES $ TBD |
|---|---|

## THIS CLAIM MUST BE SIGNED
### NOTE: PRESENTATION OF A FALSE CLAIM IS A FELONY (PENAL CODE SECTION 72)

## WARNING

- CLAIMS FOR DEATH, INJURY TO PERSON OR TO PERSONAL PROPERTY MUST BE FILED NOT LATER THAN 6 MONTHS AFTER THE OCCURRENCE. (GOVERNMENT CODE SECTION 911.2)

- ALL OTHER CLAIMS FOR DAMAGES MUST BE FILED NOT LATER THAN ONE YEAR AFTER THE OCCURRENCE. (GOVERNMENT CODE SECTION 911 2)

- SUBJECT TO CERTAIN EXCEPTIONS, YOU HAVE ONLY SIX (6) MONTHS FROM THE DATE OF THE WRITTEN NOTICE OF REJECTION OF YOUR CLAIM TO FILE A COURT ACTION (GOVERNMENT CODE SECTION 945 6)

- IF WRITTEN NOTICE OF REJECTION OF YOUR CLAIM IS NOT GIVEN, YOU HAVE TWO (2) YEARS FROM ACCRUAL TO FILE A COURT ACTION (GOVERNMENT CODE SECTION 945 6)



| 14 PRINT OR TYPE NAME P CHRISTOPHER ARDALAN | DATE 3/15/18 | 15 SIGNATURE OF CLAIMANT OR PERSON FILING RELATIONSHIP TO CLAIMANT |
|---|---|---|

## COUNTY CLAIM FORM.

### No. 7 - "Describe in detail how the DAMAGE or INJURY occurred?"

On March 16, 2017, Vanessa Perez and her husband, Eldis Pena visited one of their favorite Salvadoran restaurants, Los Molcajetes, in their Westlake neighborhood. As Ms Perez and Mr Pena were minding their own business and awaiting their food order, a man, later identified as Jonathan Quevedo, began to verbally harass and threaten them. Not wanting to have any trouble with anyone, Ms Perez and Mr Pena quickly attempted to exit the restaurant to avoid any further confrontation. However, Jonathan Quevedo quickly escalated the situation and began to physically attack Ms Perez and Mr Pena, striking them with a cane and threatening to kill them. Ms Perez and Mr Pena were able to escape out of the back of the restaurant.

When the LAPD reviewed the surveillance video from inside the restaurant, the officer recognized the assailant as Jonathan Quevedo, a documented gang member with a lengthy criminal history dating back nearly 15 years. Mr Quevedo was found, arrested and charged with three (3) counts of assault with a deadly weapon on or about April 20, 2017.

On or about August 8, Ms Perez and Mr Pena appeared in a downtown LA courtroom for a hearing wherein a protective order was issued. Ms Perez and Mr Pena expressed to the investigating officers and the prosecuting attorneys that they were reluctant to participate in the process and they were fearful that Mr Quevedo's gang would retaliate against them if they cooperated. Ms Perez and Mr Pena were repeatedly assured that protective measure would be taken and they would be safe and have nothing to worry about. However, upon information and belief, prior to the issuance of the protective order, the Los Angeles County Deputy District Attorney who filled out the application for the protective order, filed it without properly removing or otherwise redacting the home and business addresses of the very people he was seeking to protect, Ms Perez and Mr Pena.

Applications for criminal protective orders are sought to protect victims and witnesses of crimes from being stalked, harassed, injured or killed by the criminal defendants they may be testifying against. Criminal protective orders do not require that the address of the victim or witness be provided and for good reason -- it points the criminal defendant directly to where the victim or witness lives, which all but guarantees that the victim/witness' safety is jeopardized. In fact, such conduct by an attorney is not only prohibited, but can amount to a crime. Per Penal Code section 1054 2, "no attorney may disclose or permit to be disclosed to a defendant, members of the defendant's family, or anyone else, the address or telephone number of a victim or witness[ ]"

Here, a Los Angeles County Deputy District Attorney violated Penal Code section 1054 2 by providing addresses for Ms Perez and Mr Pena on the protective order. Not only should this prosecutor have known that this information would become public record if not withdrawn or redacted, but he should have known that Mr Quevedo or any member of Mr Quevedo's gang

could access this information, track Ms Pena and/or Mr Perez down, and try to injure or kill them or their family in an attempt to silence their testimony

On or about September 19, 2017, in the early morning hours, Mr Quevedo came to the home address, which had been provided by the Los Angeles County Prosecutor, of Ms Perez and Mr Pena in a clear and blatant attempt to intimidate and cause them fear and bodily harm in order to prevent Ms Perez and Mr Pena from testifying against him in any criminal matter

On or about September 19, 2017, Mr Quevedo fired his hand-gun into a vehicle occupied by Ms Perez and Mr Pena's adult son, Joshua Perez  Joshua Perez's wife, Deana Varo, was also in the vehicle  Joshua Perez was grazed by a bullet fired by Mr Quevedo  Ms Varo was struck three (3) times with bullets fired from Mr Quevedo's gun

Ms Varo and Joshua Perez both suffered extreme physical, mental and emotional injuries as the result of the Los Angeles County Prosecutor's actions  Ms Vanessa Perez and Mr Eldis Pena suffered extreme mental and emotional injuries as the result of the Los Angeles County Prosecutor's actions

Out of fear for their own lives and well-being, the entire family, Vanessa Perez, Eldis Pena, Joshua Perez, Deana Varo (their 2 minor children), Calvin Perez and Justin Perez were all forced to immediately flee the safety of their home and enter protective custody so the gang would not attempt to exact any additional revenge or retribution

Since the very beginning of the nightmare ordeal, Ms Perez and Mr Pena have lived in constant fear that Mr Quevedo and his gang would try to further harm or kill them or their family  They were so fearful that they never told their family about the initial assault, hoping it would all just fade away and they could go on with their lives  Their worst fears were realized on September 19, 2017 when Quevedo tried to kill Joshua Perez and Deana Varo  Since that day, the entire family has been living a constant nightmare  They have been completely uprooted from the life they once knew, forced to relocate to an entirely different and unfamiliar neighborhood  They are afraid to leave their house  They are afraid that every individual they see is a potential gang associate of Jonathan Quevedo  They are deathly afraid that the very people that were supposed to protect them initially will betray their trust again, with deadly results

## No 10 - "Why do you claim the County is responsible?"

Per Government Code section 815 6, the County is responsible because it violated a mandatory duty imposed on its employees under Penal Code section 841 5 to not disclose the address or telephone number of any victim or witness to any person who may be a defendant in a criminal action

Penal Code section 841 5 imposes a mandatory duty on County law enforcement, which necessarily includes District Attorneys, not to disclose such information  Plaintiff is informed

and believes that a County of Los Angeles Deputy District Attorney violated this mandatory duty by failing to removing or otherwise redacting the home and business addresses of his assault victims, Ms Perez and Mr Pena

Plaintiff is informed and believes that the purpose of Penal Code section 841 5 is to protect victims, witnesses, and/or the families of victims and/or witness to a crime, from suffering injury and/or death Plaintiffs are informed and believe that as a direct consequence of the County's failure to comply with the mandatory duty imposed by Penal Code section 841 5, Mr Quevedo was able to track down the home of his victims and open fire on a vehicle occupied by Ms Perez and Mr Pena's adult son, Joshua Perez and Joshua Perez's wife, Deana Varo, in a brazen attempt to prevent Ms Perez and Mr Pena from testifying against him in any criminal matter